(Slip Opinion) OCTOBER TERM, 2024 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## E.M.D. SALES, INC., ET AL. *v.* CARRERA ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23–217.   Argued November 5, 2024—Decided January 15, 2025

In 1938, Congress enacted the Fair Labor Standards Act (FLSA), guaranteeing a federal minimum wage for covered workers, 29 U. S. C. §206(a)(1), and requiring overtime pay for those working more than 40 hours per week, §207(a)(1).  Congress exempted many types of employees from the FLSA's overtime-pay requirement, including outside salesmen who primarily work away from their employer's place of business.  §213(a)(1).  The law places the burden on the employer to show that an exemption applies.

Petitioner EMD distributes food products in the Washington, D. C., area and employs sales representatives who manage inventory and take orders at grocery stores.  Several sales representatives sued EMD alleging that the company violated the FLSA by failing to pay them overtime.  EMD argued that the sales representatives were outside salesmen and therefore exempt from the FLSA's overtime-pay requirement.  After a bench trial, the District Court found EMD liable for overtime because EMD did not prove by clear and convincing evidence that its sales representatives were outside salesmen.  On appeal, EMD argued that the District Court should have used the less stringent preponderance-of-the-evidence standard instead of the clear-and-convincing-evidence standard.  Applying Circuit precedent, the Fourth Circuit disagreed and affirmed the District Court's judgment.

*Held*: The preponderance-of-the-evidence standard applies when an employer seeks to demonstrate that an employee is exempt from the minimum-wage and overtime-pay provisions of the FLSA.  Pp. 4–8.

(a) When Congress enacted the FLSA in 1938, the preponderance-of-the-evidence standard was the default in American civil litigation, and it remains so today.  In civil litigation, the Court has deviated from this default standard in three main circumstances.  First, if a statute

requires a heightened standard of proof, courts must apply it. See, *e.g.,* §§218c(b)(1), 464(c). Second, the Constitution can mandate a heightened standard of proof. See, *e.g., New York Times Co.* v. *Sullivan*, 376 U. S. 254; *Addington* v. *Texas*, 441 U. S. 418. Third, in certain rare situations involving coercive Government action, such as taking away a person's citizenship, a heightened standard may apply. See, *e.g.*, *Nishikawa* v. *Dulles*, 356 U. S. 129. But in most civil cases, including employment-discrimination cases under Title VII, the Court has consistently applied the preponderance standard. See, *e.g.*, *Price Waterhouse* v. *Hopkins*, 490 U. S. 228. Pp. 4–6.

(b) The FLSA does not specify a standard of proof for exemptions, and when a civil statute is silent, courts typically apply the preponderance standard. See, *e.g., Grogan* v. *Garner*, 498 U. S. 279. This case does not involve constitutional rights that would require a heightened standard, nor does it involve the Government taking unusual or coercive action against an individual. FLSA cases are similar to Title VII employment-discrimination cases, where the Court has applied the preponderance standard. P. 6.

(c) The employees' policy-laden arguments for a heightened standard are unconvincing. Their argument that the FLSA protects the public interest in a fair economy does not necessitate a heightened standard. Other workplace protections, like those under Title VII, also serve important public interests but are subject to the preponderance standard. The employees argue that rights under the FLSA are nonwaivable and therefore different from other rights subject to the preponderance standard. But waivability of a right does not determine the standard of proof. Pp. 7–8.

Whether the employees would fail to qualify as outside salesmen even under a preponderance standard is left for the Court of Appeals on remand. P. 8.

75 F. 4th 345, reversed and remanded.

KAVANAUGH, J., delivered the opinion for a unanimous Court. GORSUCH, J., filed a concurring opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 23–217

## E.M.D. SALES, INC., ET AL., PETITIONERS *v.* FAUSTINO SANCHEZ CARRERA, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[January 15, 2025]

JUSTICE KAVANAUGH delivered the opinion of the Court.

The Fair Labor Standards Act of 1938 requires employers to pay their employees a minimum wage and overtime compensation. But the Act also exempts many categories of employees from the minimum-wage and overtime-compensation requirements. The dispute here concerns the standard of proof that an employer must satisfy to show that an employee is exempt. The usual standard of proof in civil litigation is preponderance of the evidence. A more demanding standard, such as clear and convincing evidence, applies only when a statute or the Constitution requires a heightened standard or in certain other rare cases, such as "when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief— against an individual." *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 253 (1989) (plurality opinion). None of those exceptions applies to this case. Therefore, the preponderance-of-the-evidence standard governs when an employer attempts to demonstrate that an employee is exempt.

## I

### A

In 1938, Congress passed and President Franklin Roosevelt signed the Fair Labor Standards Act. 52 Stat. 1060. The Act guarantees covered workers a federal minimum wage. See 29 U. S. C. §206(a)(1). The Act also generally requires overtime pay when a covered employee works more than 40 hours per week. See §207(a)(1).

But Congress recognized that a minimum wage and overtime pay would be impractical or inappropriate for some jobs. So the Act exempts many categories of employees from the minimum-wage requirement and exempts many more from the overtime-pay requirement. See §§213(a)–(b). Exempt employees can range from baseball players to seamen to maple-syrup processors to software engineers to firefighters, and so on. See §§213(a)(12), (17), (19), (b)(15), (20). The law places the burden on the employer to show that an exemption applies. See *Corning Glass Works* v. *Brennan*, 417 U. S. 188, 196–197 (1974).

The exemption relevant here encompasses anyone employed "in the capacity of outside salesman." §213(a)(1). An "outside salesman" primarily makes sales and regularly works away from the employer's place of business. See *Christopher* v. *SmithKline Beecham Corp.*, 567 U. S. 142, 148 (2012); 29 CFR §541.500(a) (2023).

### B

EMD distributes international food products in the Washington, D. C., metropolitan area. EMD employs sales representatives who manage inventory and take orders at grocery stores that stock EMD products.

Several EMD sales representatives sued the company in the U. S. District Court for the District of Maryland. They alleged that EMD violated the Fair Labor Standards Act by failing to pay them overtime. EMD did not deny that the

employees worked more than 40 hours per week without receiving overtime pay. But EMD argued that the employees fell within the Act's outside-salesman exemption.

Following a bench trial, the District Court concluded that EMD failed to prove "by clear and convincing evidence" that the employees qualified as outside salesmen. Civ. No. 17–3066 (D Md., Mar. 19, 2021), App. to Pet. for Cert. 49a. The court found that the employees primarily executed the terms of sales already made rather than making new sales themselves. The court therefore ordered EMD to pay overtime wages and liquidated damages.

On appeal, EMD contended that the District Court should have applied the less stringent preponderance-of-the-evidence standard rather than the clear-and-convincing-evidence standard. The U. S. Court of Appeals for the Fourth Circuit disagreed and affirmed the judgment of the District Court. 75 F. 4th 345 (2023). The Court of Appeals followed Circuit precedent requiring employers to prove the applicability of Fair Labor Standards Act exemptions by clear and convincing evidence. *Id.*, at 351–352. Although the three-judge panel suggested that the full court might want to reconsider that precedent en banc, the court later denied en banc review. *Id.*, at 353.

The Fourth Circuit stands alone in requiring employers to prove the applicability of Fair Labor Standards Act exemptions by clear and convincing evidence. Every other Court of Appeals to address the issue has held that the preponderance standard applies. See *Faludi* v. *U. S. Shale Solutions, L.L.C.*, 950 F. 3d 269, 273 (CA5 2020); *Renfro* v. *Indiana Mich. Power Co.*, 497 F. 3d 573, 576 (CA6 2007); *Yi* v. *Sterling Collision Centers, Inc.*, 480 F. 3d 505, 506–508 (CA7 2007); *Coast Van Lines, Inc.* v. *Armstrong*, 167 F. 2d 705, 707 (CA9 1948); *Lederman* v. *Frontier Fire Protection, Inc.*, 685 F. 3d 1151, 1158 (CA10 2012); *Dybach* v. *Florida Dept. of Corrections*, 942 F. 2d 1562, 1566, n. 5 (CA11 1991).

This Court granted certiorari to resolve that conflict. 602 U. S. ___ (2024).

## II
### A

In 1938, when Congress enacted the Fair Labor Standards Act, the established default standard of proof in American civil litigation was the preponderance-of-the-evidence standard. The Court's cases pre-dating the Act recognized as much. See *United States* v. *Regan*, 232 U. S. 37, 48 (1914); *Lilienthal's Tobacco* v. *United States*, 97 U. S. 237, 266 (1878). As did prominent treatises. See 4 J. Wigmore, Evidence in Trials at Common Law §2498, pp. 3545–3546 (1905); 3 S. Greenleaf, Law of Evidence §29, p. 28 (8th ed. 1867).

Since then, the preponderance-of-the-evidence standard has remained the default standard of proof in American civil litigation. That default makes sense: The preponderance standard allows both parties in the mine-run civil case to "share the risk of error in roughly equal fashion." *Herman & MacLean* v. *Huddleston*, 459 U. S. 375, 390 (1983) (quotation marks omitted).

In civil litigation, this Court has deviated from the preponderance standard in three main circumstances.

*First*, courts must apply a heightened standard of proof if a statute establishes one. For example, various provisions of the U. S. Code, including some involving labor and employment, designate clear and convincing evidence as the applicable standard of proof. See, *e.g.*, 29 U. S. C. §218c(b)(1) (whistleblower-retaliation claims under the Fair Labor Standards Act); §464(c) (validity of union-established trusteeships); §722(a)(3)(A)(ii) (ineligibility for vocational rehabilitation services). The same can be true when Congress uses a term with a settled common-law meaning that itself required a heightened standard of proof. See, *e.g.*, *Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91, 102

(2011).

*Second*, courts likewise must apply a heightened standard of proof when the Constitution requires one. For example, the Court has mandated a clear-and-convincing-evidence standard in certain First Amendment cases. See, *e.g.*, *New York Times Co.* v. *Sullivan*, 376 U. S. 254, 285–286 (1964); *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 342 (1974). The Court has also held that the Due Process Clause necessitates a heightened standard in some cases. In *Addington* v. *Texas*, for example, the Court ruled that involuntary civil commitment constitutes such a "significant deprivation of liberty" by the government that "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." 441 U. S. 418, 425–427 (1979). And in *Santosky* v. *Kramer*, the Court held the same with respect to the government's termination of parental rights: "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." 455 U. S. 745, 747–748 (1982).

*Third*, under this Court's precedents, a heightened standard of proof may be appropriate in certain other "uncommon" cases. *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 253 (1989) (plurality opinion). These cases "ordinarily" arise "when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual." *Ibid.* For example, the Court has held that the government must satisfy a clear-and-convincing-evidence standard in order to take away a person's citizenship. See *Nishikawa* v. *Dulles*, 356 U. S. 129, 137–138 (1958) (expatriation); *Schneiderman* v. *United States*, 320 U. S. 118, 122–123 (1943) (denaturalization).

Importantly, the Court has not otherwise used a heightened standard in civil matters. See *Halo Electronics,*

*Inc.* v. *Pulse Electronics, Inc.*, 579 U. S. 93, 107 (2016) (treble damages under the Patent Act); *Grogan* v. *Garner*, 498 U. S. 279, 286–287 (1991) (bankruptcy discharges); *Herman & MacLean*, 459 U. S., at 389–390 (securities fraud); *Regan*, 232 U. S., at 48–49 (civil-penalty suit under the Alien Immigration Act). Most relevant here, the Court has applied a preponderance standard in Title VII employment-discrimination cases. See *Price Waterhouse*, 490 U. S., at 253–254 (plurality opinion); *id.*, at 260 (White, J., concurring in judgment); *id.*, at 261 (O'Connor, J., concurring in judgment).

B

We conclude that the default preponderance standard governs when an employer seeks to prove that an employee is exempt under the Fair Labor Standards Act.

*First*, as the employees acknowledge, the Fair Labor Standards Act does not specify a standard of proof for the Act's exemptions. Faced with silence, courts usually apply the default preponderance standard. Statutory silence is generally "inconsistent with the view that Congress intended to require a special, heightened standard of proof." *Grogan*, 498 U. S., at 286.

*Second*, as the employees recognize, this case does not implicate any constitutional rights that might require a heightened standard.

*Third*, this is not a case where the government otherwise seeks to take "unusual coercive action" against an individual. *Price Waterhouse*, 490 U. S., at 253 (plurality opinion). Cases under the Fair Labor Standards Act are more akin to the Title VII cases where the Court has held that a preponderance standard applies. If clear and convincing evidence is not required in Title VII cases, it is hard to see why it would be required in Fair Labor Standards Act cases.

### III

We are not persuaded by the employees' policy-laden arguments for a heightened standard when an employer seeks to show that an employee is exempt. The employees contend that the Act focuses not on the individual's interest in damages, but rather on the public's interest in a well-functioning economy where workers are guaranteed a fair wage. But that premise, even if accepted, does not demand a heightened standard. After all, other workplace protections that vindicate important public interests remain subject to the preponderance standard. Eradicating discrimination from the workplace is undoubtedly important. Yet as explained above, this Court has held that a preponderance standard is appropriate for Title VII cases. See *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 253–254 (1989) (plurality opinion).

In addition, the public interest in Fair Labor Standards Act cases does not fall entirely on the side of employees. Most legislation reflects a balance of competing interests. So it is here. Rather than choose sides in a policy debate, this Court must apply the statute as written and as informed by the longstanding default rule regarding the standard of proof.

Next, the employees contend that the minimum-wage and overtime-pay rights conferred by the Fair Labor Standards Act are not waivable and are therefore distinct from other rights subject to a preponderance standard. But the waivability (or lack thereof) of a right does not dictate the applicable standard of proof. Consider the criminal process. Even though the prosecution must meet a high standard of proof—beyond a reasonable doubt—criminal defendants may waive their right to trial by pleading guilty. At the same time, some rights that are not waivable are subject to the preponderance-of-the-evidence standard. For example, certain rights conferred by the National Labor Relations Act are not waivable. See *National Licorice Co.*

v. *NLRB*, 309 U. S. 350, 360–361 (1940); *McLaren Macomb*, 372 N. L. R. B. No. 58, pp. 5–6 (2023). Yet employers may prove affirmative defenses to those rights by a preponderance. See *NLRB* v. *Transportation Management Corp.*, 462 U. S. 393, 400, 403 (1983).

As those cases illustrate, the waivability of a right and the standard of proof are two distinct inquiries. Therefore, although at least some Fair Labor Standards Act rights are not waivable, it does not follow that a heightened standard of proof must apply when an employer attempts to show that an employee is exempt.

Finally, the employees assert that a heightened standard should govern in Fair Labor Standards Act cases because the employer controls much of the evidence relevant to establishing a violation and because plaintiffs in those cases may have low incomes. But in Title VII cases too, employers control "most of the cards," and plaintiffs may be low-income. *Murray* v. *UBS Securities, LLC*, 601 U. S. 23, 36 (2024) (quotation marks omitted). Yet the preponderance standard applies in those cases. So too here.

\* \* \*

We hold that the preponderance-of-the-evidence standard applies when an employer seeks to show that an employee is exempt from the minimum-wage and overtime-pay provisions of the Fair Labor Standards Act. The employees argue that we should still affirm because they would not qualify as outside salesmen even under a preponderance standard. But our usual practice is to leave matters of that sort for remand. We see no persuasive reason to stray from that usual practice here. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 23–217

E.M.D. SALES, INC., ET AL., PETITIONERS *v.*
FAUSTINO SANCHEZ CARRERA, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[January 15, 2025]

JUSTICE GORSUCH, with whom JUSTICE THOMAS joins, concurring.

Sometimes, the Constitution or Congress provides a particular standard of proof. See *ante,* at 4–5. If not, courts must find one. As in other contexts, they do so by examining the legal backdrop against which Congress has legislated. See, *e.g.*, *Dixon* v. *United States*, 548 U. S. 1, 17 (2006); cf. *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles"). In civil cases, those background legal principles typically require proof by a preponderance of the evidence. See *ante,* at 4. Occasionally, though, the default "common-law rule" provides instead for a "heightened standard of proof." *Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91, 116 (2011) (THOMAS, J., concurring in judgment). Either way, courts apply the default standard unless Congress alters it or the Constitution forbids it. See, *e.g.*, *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. 545, 557–558 (2014). To do otherwise would be to "choose sides in a policy debate," *ante,* at 7, rather than to declare the law as our judicial duty requires. Our decision today is consistent with this understanding, and I am pleased to join it.